## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

LION ROCK LICENSING CORPORATION,
and BUTTERBALL FARMS, INC.

        Plaintiffs,

v.                                Civil Action No. 2:19-cv-11590

BUTTER EMPORIUM LLC,

        Defendant.

---

Brian D. Wassom (P60381)
Mary C. Bonnema (P48789)
WARNER NORCROSS + JUDD LLP
45000 River Ridge Drive, Suite 300
Clinton Township, Michigan 48038
(248) 784-5039
Attorneys for Plaintiffs
bwassom@wnj.com
mbonnema@wnj.com

---

## COMPLAINT

    Plaintiffs Lion Rock Licensing Corp. and Butterball Farms, Inc. (collectively, "Plaintiffs"), through their attorneys, hereby state their Complaint against Defendant Butter Emporium LLC ("Defendant"), and allege the following:

### PARTIES

    1.    Lion Rock Licensing Corp. ("Lion Rock") is a Michigan corporation with its principal place of business in Grand Rapids, Michigan.

1

2.      Butterball Farms, Inc. ("Butterball Farms") is a Michigan corporation with its principal place of business in Grand Rapids, Michigan.

3.      Upon information and belief, Defendant Butter Emporium LLC is a Texas limited liability company with a principal place of business in Stafford, Texas, which is owned and/or operated by Mr. Levi "Gil" Shoshan.

## JURISDICTION AND VENUE

4.      Count I arises under the laws of the United States prohibiting infringement of federally registered trademarks, specifically the Lanham Act, 15 U.S.C. § 1114. Count II is for trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114. Count III is for unfair competition and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Count IV is for trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Count V is for unfair competition under Michigan common law. Count VI is for violation of the Michigan Consumer Protection Act, M.C.L. § 445.903. Count VII is for unjust enrichment under Michigan common law.

5.      This Court has subject matter jurisdiction over the claims arising under the Lanham Act based on 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and § 1338(a), because the claims arise under federal law. This Court has subject matter jurisdiction over all of the claims based on 28 U.S.C. § 1332 because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. This Court also has supplemental jurisdiction over the state law claim based on 28 U.S.C. § 1367

because the state law claim is so related to the federal claim that it forms part of the same case and controversy.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Plaintiffs reside in the State of Michigan and do business this judicial district. Further, Plaintiffs believe that Defendant has sold and distributed the infringing goods throughout the United States, and specifically in this judicial district, and that Defendant has thereby committed the acts of infringement, false designation of origin, and unfair competition complained of in this district.

## LION ROCK'S TRADEMARK RIGHTS

7.     Lion Rock is the owner of United States Trademark Registration No. 5,344,177 for a 3-D Spherical Design for butter and margarine and any and all associated common-law trademark rights (the "3-D Spherical Design Mark").

8.     The 3-D Spherical Design Mark trademark registration is valid and subsising on the Principal Register of the U.S. Patent & Trademark Office. A copy of the trademark registration is attached as ***Exhibit A***, and an excerpt therefrom is reproduced below:



**Reg. No. 5,344,177**

**Registered Nov. 28, 2017**

**Int. Cl.: 29**

**Trademark**

**Principal Register**

Lion Rock Licensing Corp. (MICHIGAN CORPORATION)
1435 Buchanan Avenue
Grand Rapids, MICHIGAN 49506

CLASS 29: Butter and margarine

FIRST USE 1-1-1997; IN COMMERCE 12-20-1999

The mark consists of 3-dimensional, spherical shape completely covered with protuberances.

SEC.2(F)

SER. NO. 87-186,362, FILED 09-28-2016

9.      Lion Rock is also the owner of any and all trade dress rights associated with the unique shape of the goods bearing the 3-D Spherical Design Mark (the "Trade Dress").

10.     Butterball Farms is the exclusive licensee for the manufacturing and production of butter products associated with the 3-D Spherical Design Mark and Trade Dress.

11.     Butterball Farms also has a non-exclusive license to market and sell butter products associated with the 3-D Spherical Design Mark and Trade Dress (hereafter "Plaintiffs' Goods").

## DEFENDANT BUTTER EMPORIUM

12.     Defendant manufactures, distributes, markets, and sells butter products that directly compete with Plaintiffs' Goods.

13.     Upon information and belief, Defendant is owned and/or operated by Mr. Levi "Gil" Shoshan, who previously owned and/or operated Signature Butter Farms, Inc.

("Signature"), a Florida corporation. In 2002, a jury verdict, final judgment, and permanent injunction were entered against Signature in the U.S. District Court for the Southern District of Florida for Signature's violation of certain trademark and trade dress rights of Butterball Farms and its then-licensor in a different three-dimensional mark—embossed rose designs on butter products (the "Signature Litigation.") Copies of the Special Verdict, Final Judgment, and Permanent Injunction from the Signature Litigation are attached as ***Exhibit B***.

## BACKGROUND

### A.   BUTTERBALL FARMS' BUSINESS

14.     Butterball Farms is a well-known and highly regarded manufacturer, distributor, marketer, and seller of quality butter products throughout the United States. It sells its butter products to, among others, restaurants, hotels, and food service providers. Such consumers recognize Butterball Farms as the source of uniquely designed butter products for use in their own respective businesses.

15.     Butterball Farms or its predecessors have continuously manufactured, produced, marketed, distributed, and sold uniquely shaped and embossed butter and margarine products for over 45 years. Butterball Farms continues to do so under license to Lion Rock and its predecessors. Butterball Farms' licensed designs clearly distinguish Butterball Farms' butter products from butter products sold by others.

16.     In recognition of the distinctiveness of the designs, the U.S. Patent & Trademark Office has granted numerous registrations for such designs with butter and

margarine products on the Principal Register of the U.S. Patent & Trademark Office, including, but not limited to:

- U.S. Principal Trademark Reg. No. 1,217,724, for the following design in association with "butter and margarine."



- U.S. Principal Trademark Reg. No. 1,217,725 for the following design used with "butter and margarine."



- U.S. Principal Trademark Reg. No. 2,392,566 for the following "Rose Design" mark used with "butter and margarine."



6

- U.S. Principal Trademark Reg. No. 1,217,723 for the following design used with "butter and margarine."



- U.S. Principal Trademark Reg. No. 3,062,002 for the following design used with "butter and margarine."



- U.S. Principal Trademark Reg. No. 943,343 for the following design used with "butter and margarine."



- U.S. Principal Trademark Reg. No. 4,117,067 for the following design used with "butter, margarine."



Copies of these trademark registrations associated with these distinctive designs are attached here as ***Exhibit C.***

17.     Lion Rock and/or its affiliates also own the following registered design marks for butter and/or margarine on the Principal Register:

- U.S. Principal Reg. No. 943,344;

- U.S. Principal Reg. No. 956,198;

- U.S. Principal Reg. No. 1,192,837;

- U.S. Principal Reg. No. 1,198,134;

- U.S. Principal Reg. No. 1,202,194;

- U.S. Principal Reg. No. 2,890,868;

- U.S. Principal Reg. No. 3,128,540; and

- U.S. Principal Reg. No. 3,860,519;

**B.     THE TRADEMARK AND TRADE DRESS RIGHTS**

18.     Lion Rock is the owner of the 3-D Spherical Design Mark, its corresponding trademark registration, and the associated Trade Dress as shown below and in ***Exhibit A***:



19.     The butter products manufactured and sold in association with the 3-D Spherical Design Mark and the Trade Dress have continuously been manufactured sold in the United States by Butterball Farms and its predecessors for nearly two decades, since at least December 20, 1999.

20.     Butterball Farms uses specialized equipment used to manufacture the butter products associated with the 3-D Spherical Design Mark and Trade Dress.

21.     The distinctive design of the butter products manufactured and sold in association with the 3-D Spherical Design Mark and Trade Dress was adopted 20 years ago to distinguish Butterball Farms' butter from that sold by others and to create a very strong market and reputational presence as a source indicator of high-quality butter products.

22.     As a consequence of the long, extensive, and exclusive use of the 3-D Spherical Design Mark in association with butter and margarine, the 3-D Spherical Design Mark has become an exceedingly strong and distinctive trademark.

23.     The butter product associated with the 3-D Spherical Design Mark and Trade Dress is one of Butterball Farms' best-selling products and one that has been exclusive in the marketplace.

24.     The distinctive 3-D Spherical Design Mark and its associated Trade Dress have long symbolized and been readily identified with premium-quality butter emanating from a single source, namely Butterball Farms. Below is an example of Butterball Farms' butter product bearing the 3-D Spherical Design Mark and Trade Dress.



### C.   DEFENDANT'S BUSINESS ACTIVITY

25.     Plaintiffs recently learned that Defendant currently manufactures, distributes, markets, sells, and otherwise promotes butter products (the "Accused Goods") that bear the same distinctive shape as butter products manufactured, promoted and sold by Butterball Farms in association with the 3-D Spherical Design Mark and Trade Dress, as shown below:



26.     Further, Defendant currently markets, promotes, and sells the Accused Goods in packaging that bears a mark that is confusingly similar to the name of "Butterball Farms," namely "BUTTER BALLS," as shown below:



27.     Upon information and belief, Defendant is selling the Accused Goods to the same or similar types of consumers to whom Butterball Farms sells its butter products, namely, hotels and restaurants.

28.     Upon information and belief, Defendant's Accused Goods are sold into the hospitality industry through at least Avendra, LLC.

29.     Upon information and belief, Avendra, LLC, operates as a subsidiary of Aramark Services, Inc.

30.     Upon information and belief, Avendra, LLC, services hotel brands including Marriott International, Starwood Brand, Hilton Worldwide, and Hyatt Brand across the country, including in the State of Michigan.

31.     Upon information and belief, the Starwood Brand includes Westin hotels.

32.     Upon information and belief, Defendant's Accused Goods have been sold to at least one Westin hotel in Cadillac, Michigan.



33.     Upon viewing the Accused Goods, purchasers and consumers are likely to believe that Defendant's Accused Goods originate with, or are sponsored or approved by, Butterball Farms.

34.     Defendant's manufacture, marketing, and sale of the Accused Goods began after Butterball Farms had been manufacturing, marketing, and selling its butter products bearing the 3-D Spherical Design Mark and Trade Dress for many years.

35.     Upon information and belief, Defendant's manufacture, marketing, and sale of the Accused Goods began after Lion Rock obtained its trademark registration for the 3-D Spherical Design, and after Lion Rock had developed trademark rights in the 3-D Spherical Design andTrade Dress.

36.     Upon information and belief, Defendant is aware of, and has long been aware of, Butterball Farms' manufacturing, marketing and sale of butter products bearing the 3-D Spherical Design and Trade Dress.

37.     Upon information and belief, Defendant has and continues to intentionally and willfully infringe Plaintiffs' 3-D Spherical Design Mark and Trade Dress rights and has done so in an attempt to trade off the goodwill and reputation that Plaintiffs have long established in its own butter products bearing the 3-D Spherical Design and Trade Dress.

**D.     PAST LITIGATION BETWEEN BUTTERBALL FARMS AND LEVI "GIL" SHOSHAN OF SIGNATURE**

38.     In 2001, Butterball Farms and its licensor sued Signature for, among other things, trademark and trade dress infringement for manufacturing, marketing, and selling of

butter products bearing embossed rose designs that were confusingly similar to butter products bearing Butterball Farm's federally registered trademark and common-law trade dress in certain embossed rose designs.

39.     Signature was owned and operated by Mr. Shoshan. As such, Mr. Shoshan is and has been for many years fully aware of Butterball Farms, its reputation as a source for high-quality butter products, and its iconic butter products bearing the 3-D Spherical Design and Trade Dress.

40.     The Signature Litigation resulted in a jury verdict on November 20, 2002, against Signature (and in favor of Butterball Farms) for trademark infringement of U.S. Trademark Registration U.S. Reg. No. 2,392,566 and for infringement of common-law trade dress in certain rose designs for butter products that were manufactured and sold by Butterball Farms. *See generally* Case No. 01-8650 (SD Fla. 2001); *see also* **Exhibit B.**

41.     Given the past history of Mr. Shoshan and Butterball Farms, as well as Mr. Shoshan's involvement in Defendant's business, Defendant has been and is aware of the existence of the registered 3-D Spherical Design Mark and the Trade Dress associated therewith as used by Butterball Farms in the sale of its butter products. Such awareness existed prior to Defendant's adoption and use of a confusingly similar spherical-shaped design on the Accused Goods.

42.     Defendant was aware and should have been aware that its use of a confusingly similar shaped spherical design for butter products in connection with the marketing and

distribution of the Accused Goods was likely to confuse, mislead, and otherwise deceive consumers as to the source, sponsorship, or affiliation of its products. Despite this, Defendant decided to manufacture, market, distribute, promote and sell its products, on information and belief, in an attempt to capitalize and trade on the goodwill of Plaintiffs' federally registered 3-D Spherical Design Mark and Trade Dress used by Butterball Farms.

E.     HARM TO PLAINTIFFS

43.     Defendant's use of the identical or nearly identical spherical design and shape in connection with the marketing, distribution, promotion and sale of the Accused Goods is likely to cause confusion with Plaintiffs' registered 3-D Spherical Design Mark and Trade Dress that has long been used with its own butter products. Defendant's use is also likely to cause confusion and mislead and deceive consumers as to the source, sponsorship or affiliation of Defendant's Accused Goods.

44.     If Defendant is permitted to continue to manufacture, market, distribute, promote and sell the Accused Goods by infringing Plaintiffs' distinctive Trademark and Trade Dress, Plaintiffs will continue to suffer irreparable harm for which there is no adequate remedy at law.

**COUNT I**
**TRADEMARK INFRINGEMENT**
**LANHAM ACT – 15 U.S.C. § 1114(1)**

45.     Plaintiffs incorporate all prior paragraphs as if they have been stated here.

46.     Lion Rock owns United States Trademark Registration No. 5,344,177 for a 3-D Spherical Design for butter and margarine on the Principal Register.

47.     Defendant's unauthorized use in commerce of a spherical butter design which is confusingly similar to the registered 3-D Spherical Design Mark, and on goods that are identical or substantially similar and highly related to the goods of Lion Rock, is likely to cause confusion or cause mistake, and/or deceive users as to the origin, sponsorship, or approval by Lion Rock of Defendant's goods.

48.     Defendant's unauthorized use in commerce of a spherical butter design which is confusingly similar to the registered 3-D Spherical Design Mark, is likely to cause the relevant public to mistakenly believe that Defendant's goods originate from, are sponsored by, or are in some way associated or affiliated with Lion Rock, and is likely to cause Lion Rock's 3-D Spherical Design Mark to lose its significance as an indicator of origin. Defendant's actions violate 15 U.S.C. § 1114(1).

49.     Defendant's unauthorized use in commerce of a spherical butter design, which is confusingly similar to the registered 3-D Spherical Design Mark with goods that are identical or substantially similar and highly related to Lion Rock's goods, is being conducted with full knowledge by Defendant of Lion Rock's prior rights. Thus, Defendant has willfully infringed and is infringing such rights in violation of the Lanham Act.

50.     The goods proffered by Defendant are intended to be and are in fact targeted toward a substantial segment of the public (including but not limited to hoteliers) that has long

16

been familiar with Lion Rock's goods bearing its unique 3-D Spherical Design Mark. Defendant's goods target the same purchasers as Lion Rock's goods.

51.     Plaintiffs have no control over the nature of the goods marketed and provided by Defendant.

52.     As a result of Defendant's actions, Plaintiffs have suffered and will continue to suffer irreparable harm and injury to its business reputation and goodwill for which there is no adequate remedy at law.

53.     This is an exceptional case pursuant to 15 U.S.C. § 1117.

54.     By reason of the above, Plaintiffs are entitled to injunctive relief against Defendant that permanently restrains Defendant from further acts of trademark infringement and to any damages that have been caused by Defendant's aforementioned acts, including but not limited to, treble damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II
### TRADEMARK COUNTERFEITING
### LANHAM ACT – 15 U.S.C. § 1114

55.     Plaintiff's incorporate all prior paragraphs as if they have been stated here.

56.     Defendant, without authorization from Lion Rock, has used and is continuing to use spurious designations that are identical to, or substantially indistinguishable from, Lion Rock's 3-D Spherical Design Mark.

57.     The foregoing acts of Defendant are intended to cause, have caused, and are likely to cause confusion or mistake, or to deceive consumers, the public, and the trade into believe that Defendant's Accused Goods are genuine or authorized products of Lion Rock.

58.     Upon information and belief, Defendant has acted with knowledge of Lion Rock's ownership of the 3-D Spherical Design Mark and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the 3-D Spherical Design Mark.

59.     Defendant's acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

60.     Upon information and belief, Defendant has made and will continue to make substantial profits and/or gains to which it is not entitled in law or equity.

61.     Upon information and belief, Defendant intends to continue its infringing acts, unless restrained by this Court.

62.     Defendant's acts have damaged and will continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

**COUNT III**
**FEDERAL UNFAIR COMPETITION**
**LANHAM ACT – 15 U.S.C. § 1125(A)**

63.     Plaintiffs incorporate all prior paragraphs as if they have been stated here.

64.     Defendants' unauthorized use in commerce of a spherical butter design to advertise, market, and sell goods that are identical or substantially similar and highly related

to Defendant's goods constitutes unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

65.     Consumers are likely to be misled and deceived by Defendant's representations regarding its goods.

66.     Defendant knew or should have known that its use of the spherical butter design was false or likely to mislead.

67.     As an actual and proximate result of Defendant's willful and intentional actions, Plaintiffs have suffered damages in an amount to be determined at trial, and unless Defendant is enjoined, Plaintiffs will continue to suffer irreparable harm and damage to their business, reputation, and goodwill.

68.     This is an exceptional case pursuant to 15 U.S.C. § 1117.

69.     By reason of the above, Plaintiffs are entitled to injunctive relief against Defendant that permanently restrains Defendant from further acts of trademark infringement and to any damages that have been caused by Defendant's aforementioned acts, including but not limited to, treble damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT IV**
**TRADE DRESS INFRINGEMENT**
**LANHAM ACT – 15 U.S.C. § 1125(A)(3)**

70.     Plaintiffs incorporate all prior paragraphs as if they have been stated here.

71.     Lion Rock's 3-D spherical shaped products have been widely distributed, marketed and sold in the United States for over 20 years with the Trade Dress.

19

72.   The Lion Rock 3-D spherical shaped products have an appearance that is either inherently distinctive or has acquired secondary meaning in the relevant market place.

73.   Defendant is currently advertising, distributing and selling 3-D spherical shaped products that are substantially similar in appearance to Lion Rock's distinctive Trade Dress and which are confusingly similar to Lion Rock's product.

74.   Defendant's marketing and sale of products that incorporate Lion Rock's protectable Trade Dress is likely to cause confusion, to cause mistake, or to deceive as to an affiliation, connection, or association on the origin, sponsorship or approval of Lion Rock's product, or to misrepresent the nature, characteristics, or qualities of Lion Rock's product.

75.   Defendant's advertising, marketing, and sale of similar 3-D spherical shaped products, as described above, violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

76.   Upon information and belief, Defendant's trade dress infringement has been willful.

77.   As a direct and proximate cause of Defendant's actions, Plaintiffs have been damaged and will continue to suffer actual damages, and have suffered and will continue to suffer irreparable harm and injury, to their business reputation and goodwill for which there is no adequate remedy at law.

## COUNT V
## UNFAIR COMPETITION
## VIOLATION OF MICHIGAN COMMON LAW

78.   Plaintiffs incorporate all prior paragraphs as if they have been stated here.

20

79.     By virtue of Defendant's acts hereinabove pleaded, Defendant has engaged in unfair competition in violation of Michigan common law. Defendant's use of the 3-D Spherical Design Mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Lion Rock and as to the origin, sponsorship, endorsement, or approval by Lion Rock of Defendant's products and its other commercial activity. Confusion is likely to occur if Defendant's sales and distribution of use of the 3-D Spherical Design Mark does not stop.

80.     Defendant's unauthorized use of the 3-D Spherical Design Mark in connection with goods and services that are identical or substantially similar and highly related to Lion Rock's goods jeopardizes the entire goodwill symbolized by the 3-D Spherical Design Mark, causing immediate, serious, and irreparable injury to Plaintiffs, for which Plaintiffs do not have an adequate remedy at law.

## COUNT VI
### VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT
### M.C.L. § 445.903

81.     Plaintiffs incorporate all prior paragraphs as if they have been stated here.

82.     By virtue of Defendant's acts hereinabove pleaded, Defendant is in violation of Michigan Consumer Protection Act.

83.     Defendant's use of Lion Rock's 3-D Spherical Design Mark is unfair, unconscionable, or deceptive and likely to cause confusion, or to cause mistake, or to deceive as to the source, sponsorship, approval, or certification of Defendant's goods.

84.     Defendant's unauthorized use of the 3-D Spherical Design Mark in connection with goods that are identical or substantially similar and highly related to Lion Rock's goods jeopardizes the entire goodwill symbolized by the 3-D Spherical Design Mark, causing immediate, serious, and irreparable injury to Plaintiffs, for which Plaintiffs do not have an adequate remedy at law.

<strong><u>COUNT VII</u></strong><br><strong>UNJUST ENRICHMENT</strong>

85.     Plaintiffs incorporate all prior paragraphs as if they have been stated here.

86.     Through Defendant's unlawful, unfair and deceptive use of Lion Rock's 3-D Spherical Design Mark, Defendant has received the benefit of Lion Rock's significant efforts to market Lion Rock's unique products and Lion Rock's goodwill in the food service industry.

87.     Defendant's unlawful, unfair and deceptive use of Lion Rock's 3-D Spherical Design Mark was done without Lion Rock's permission or consent.

88.     Such acts were done willfully, knowingly, intentionally and in bad faith.

89.     As such, Lion Rock involuntarily conferred a benefit on Defendant.

90.     Under Michigan law, Defendant has been unjustly enriched by its unlawful, unfair and deceptive acts in the form of additional ill-gotten sales, revenue and goodwill.

91.     Defendant's actions have irreparably harmed Plaintiffs.

92.     Plaintiffs are entitled to Defendant's ill-gotten gains and/or revenues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court enter an order and judgment in its favor and against Defendant as follows:

A.      That Lion Rock's 3-D Spherical Design Mark has been infringed by Defendant in violation of 15 U.S.C. § 1114(1).

B.      That Defendant's use of the 3-D Spherical Design Mark violates 15 U.S.C. § 1125(a).

C.      That Lion Rock's Trade Dress rights are protectable, valid, enforceable, and have been infringed by Defendant and Defendant has violated other relevant federal and state laws and regulations.

D.      That Defendant's use of the 3-D Spherical Design Mark and/or Trade Dress Rights is unfair competition under Michigan common law.

E.      That Defendant's use of the 3-D Spherical Design Mark and/or Trade Dress Rights is a violation of the Michigan Consumer Protection Act, M.C.L. 445.903.

F.      That Defendant has been unjustly enriched by Defendant's use of the 3-D Spherical Design Mark and/or Trade Dress Rights in violation of Michigan common law.

G.      That Defendant, its agents, servants, employees, attorneys, and all persons in active concert or participation with them, be permanently enjoined and restrained from:

    1.      Using the 3-D Spherical Design Mark or any variation thereof;

2.      Using any mark that is confusingly similar to or a colorable imitation of the 3-D Spherical Design Mark; and

3.      Otherwise infringing Lion Rock's 3-D Spherical Design Mark.

H.      That Defendant has willfully infringed Lion Rock's 3-D Spherical Design Mark.

I.      That Defendant be required to pay to Plaintiffs such damages, statutory or otherwise, together with pre-judgment interest thereon, as Plaintiffs have sustained as a consequence of Defendant's wrongful acts, and to account for and return to Plaintiffs any monies, profits, and advantages wrongfully gained by Defendant.

J.      That Defendant pay treble damages to Plaintiffs, pursuant to 15 U.S.C. § 1117.

K.      That Defendant pay to Plaintiffs their reasonable attorney's fees, expenses and costs incurred in this action, pursuant to 15 U.S.C. § 1117.

L.      That Defendant deliver up for impoundment, and for destruction upon entry of judgment, all products, advertising, marketing materials, writings, signage, artwork, and other material, including media, which infringe Lion Rock's rights, falsely designate its source or origin or otherwise facilitate Defendant's infringement of the Lion Rock 3-D Spherical Design Mark.

M.      That Defendant be directed to file with this Court and serve on Plaintiffs within thirty (30) days after the service of an injunction, a written report under oath setting forth in detail the manner and form in which Defendant has complied with this injunction.

N.     That Plaintiffs be granted such further relief as the Court may deem appropriate.

                                         Respectfully submitted,

Dated:        May 29, 2019              By:   /s/ Brian D. Wassom
                                              Brian D. Wassom (P60381)
                                              Mary C. Bonnema (P48789)
                                              WARNER NORCROSS + JUDD LLP
                                              45000 River Ridge Drive, Suite 300
                                              Clinton Township, Michigan 48038
                                              (248) 784-5039
                                              Attorneys for Plaintiffs
                                              bwassom@wnj.com
                                              mbonnema@wnj.com